**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| John A. "Tony" Vetter, Sr., individually and on behalf of other similarly situated individuals,<br><br>          Plaintiffs,<br><br>v.<br><br>GEICO General Insurance Company, et al.,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.: 8:13-cv-00642 RWT

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE**

**<u>INTRODUCTION</u>**

Nearly identical to another case pending before this Court, <u>Calderon, et al. v. GEICO, et al.</u>, No. 8:10-cv-01958-RWT (D. Md.) ("<u>Calderon</u>"), this case is a collective action brought under the Fair Labor Standards Act ("FLSA") on behalf of GEICO Security Investigators, <u>excluding</u> those employed in California and those who are a part of <u>Calderon</u>.[1]  The named Plaintiff, John A. "Tony" Vetter, Sr. ("Plaintiff Vetter"), is joined by six opt-in Plaintiffs, Security Investigators who worked (or currently work) for Defendants GEICO General Insurance Company or Government Employees Insurance Company (collectively, "Defendant").  Like the plaintiffs and class members in <u>Calderon</u>, the named and opt-in Plaintiffs in this case are sufficiently similarly situated to each other and to the putative opt-in Plaintiffs such that it is appropriate for the Court to conditionally certify this case and authorize Plaintiff to issue notice of this action.

_____

[1] This case excludes all Security Investigators who joined <u>Calderon</u> as FLSA opt-in Plaintiffs, as well as any Security Investigator covered by the Rule 23 certified New York class.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A.    Calderon Procedural History

Samuel Calderon ("Calderon"), a former Security Investigator employed by Defendant

filed the Calderon action on July 19, 2010.  (Calderon ECF No. 1.)  In his Complaint, he brought

a single claim against Defendant on behalf of himself and all other similarly situated

Investigators: failure to pay overtime wages in violation of the FLSA.  (Id.)  Calderon moved for

Conditional Certification and Judicial Notice pursuant to Section 216(b) of the FLSA on October

22, 2010, (Calderon ECF No. 23), and the Court granted the motion on January 12, 2011.

(Calderon ECF Nos. 31-32.)[2]  In its Order, the Court conditionally certified the case as a

collective action and authorized Calderon to send notice to any Security Investigators who

worked for Defendant within three years of the Order.  (Id.)  Plaintiff, through his counsel,

mailed notice to the 326 putative opt-in plaintiffs and, at the end of the notice period, a total of

48 joined Calderon as opt-in plaintiffs.

Calderon later amended his Complaint to add Rule 23 overtime pay claims under New

York state law and moved for Rule 23 class certification of the same.  (Calderon ECF Nos. 56-2,

61.)  The Court granted Plaintiffs' motion on February 14, 2012.  (Calderon ECF Nos. 67-68.)[3]

Calderon, through his counsel, mailed the Court-approved notice to the seventy-five (75)

members of the New York class and, at the end of the notice period, five opted-out.

The parties filed cross-motions for summary judgment on Defendant's liability in May

2012, and, on November 29, 2012, the Court granted the Calderon Plaintiffs' motion, finding

that Defendant violated the FLSA by classifying Security Investigators as exempt employees and

---

[2] Available at Calderon v. Geico Gen. Ins. Co., 2011 WL 98197 (D. Md. Jan. 12, 2011).

[3] Available at Calderon v. GEICO Gen. Ins. Co., 279 F.R.D. 337 (D. Md. 2012).

failing to pay them overtime wages when they worked more than forty hours in a workweek. (Calderon ECF Nos. 98-99.)[4]  The parties are currently preparing a stipulation of judgment that will allow both parties to appeal the Court's decisions on liability and damages to the Fourth Circuit.

### B.    Vetter Procedural History

Plaintiff Vetter filed this lawsuit on February 28, 2013, on behalf of himself and other similarly situated Security Investigators employed by Defendant pursuant to the FLSA, 29 U.S.C. § 216(b).  (ECF No. 1.)  Plaintiff Vetter alleges that Defendant misclassified Security Investigators as exempt in violation of the FLSA, 29 U.S.C. 207.  (Id.)  Plaintiff now moves this Court to conditionally certify this case as a collective action and to provide putative class members with notice of this lawsuit.  In addition to Plaintiff Vetter, six other Security Investigators have opted-in to this lawsuit.  (ECF Nos. 10-12, 14.)  The seven Plaintiffs work or worked for Defendant in Florida, Georgia, North Carolina, and Virginia.  Each has provided a sworn declaration attesting to their job duties and other matters.  (Ex. A.)[5]

### C.    The Parties

Plaintiff Vetter worked as a Security Investigator in Defendant's Special Investigation Unit ("SIU") from approximately October 12, 2009 until August 9, 2012.  (See Ex. A, Vetter Decl. ¶ 2.)  He reported to Defendant's Florida Regional Office, along with approximately 34 other Security Investigators.  (Id.)  Opt-in Plaintiffs Roxane Anderson, Coy Crosby, Tonatiuh Mestas, Martha Sink and Norman Smith reported to Defendant's Virginia Beach Regional office. (See generally Ex. A ¶ 2.)  Opt-in Plaintiff Darrell Fullmer reported to Defendant's Southeast

---

[4] Available at Calderon v. GEICO Gen. Ins. Co., --- F. Supp. 2d ----, 2012 WL 6889800 (D. Md. Nov. 29, 2012).

[5] Exhibit A contains the declarations, in alphabetical order, of each named and opt-in Plaintiff.

3

Regional Office in Georgia.  (Ex. A, Fullmer Decl. ¶ 2.)  Plaintiffs Anderson and Fullmer are current employees, while Plaintiffs Crosby, Mestas, Sink, Smith, and Vetter left their employment with Defendant at various times within the past two years.  (See generally Ex. A ¶ 2.)

Defendant is a Maryland corporation with headquarters in Montgomery County, Maryland.  (ECF Nos. 1 & 16.)  It is in the business of providing insurance to its policyholders. Calderon, 2012 WL 6889800, at *1.  Its business purpose is to sell insurance policies and then handle claims for insurance coverage made by its policy holders.  Id.

**D.      Plaintiff Vetter, the Opt-In Plaintiffs, and the Putative Opt-in Plaintiffs Share the Same Job Duties**

Declarations from the named and opt-in Plaintiffs in this case confirm that the facts of this case are exactly the same as those developed by the parties during discovery in Calderon, and upon which the Court relied when it granted the Calderon plaintiffs' motion for FLSA conditional certification, Rule 23 class certification, and summary judgment on liability. (Compare Ex. A with Calderon, 2011 WL 98197 (D. Md. Jan. 12, 2011), Calderon, 279 F.R.D. 337 (D. Md. 2012), and Calderon, 2012 WL 6889800 (D. Md. Nov. 29, 2012).)  Just as in Calderon, Plaintiffs uniformly testify in their declarations that Defendant's Security Investigators report to and work under the same corporate hierarchy: Security Investigators report to a SIU Supervisor, who reports to a SIU Manager, who report to the SIU Director and the GEICO Regional Vice President for their particular region.  (See Ex. A, ¶ 4.)  In addition, Plaintiffs uniformly testify that their job duties are not only similar to one another, but identical to the job duties described in Calderon: Security Investigators (including "Lead" and "Senior" Security Investigators), investigate claims involving questionable, suspect, or fraudulent activity, often working in the field, by interviewing witnesses, obtaining statements, and taking photographs.

(Ex. A, ¶ 6, 8.)  In the course of performing these job duties, they may work with agents from the National Insurance Crime Bureau or local law enforcement to complete some investigations.  (Id. ¶ 8.)  And, just as in Calderon, Plaintiffs testified that they are required to obtain pre-approval from the claims examiner to whom the claim was originally assigned if they want to use a private investigator or some other vendor to assist with their investigations.  (Id.)

Plaintiffs' declarations also confirm that the method by which Security Investigators report their work to Defendant is the same.  Throughout each investigation, Security Investigators periodically prepare "pending reports."  (Id. ¶ 9.)  At the end of an investigation, Security Investigators prepare a final report of findings conveying the facts of the investigation. (Id.)  In their reports, Security Investigators are not allowed to make recommendations or give opinions as to whether fraud occurred.  (Id.)  Similarly, Security Investigators are not allowed to make, or participate in, the decision to pay or deny a claim; they are merely allowed to report the facts.  (Id.)  Both pending and final reports are reviewed by the Security Investigator's supervisor, with the final reports being graded on a scale of one to five.  (Id. ¶ 10.)  After review, the supervisor decides whether additional investigation is necessary and then returns the preliminary report to the Security Investigator with further instructions.  (Id.)  Security Investigators may not send their reports to the claims professional until they are reviewed and approved by the Security Investigator's supervisor.  (Id.)  Again, all of these facts are consistent with the undisputed facts presented to the Court in Calderon.

Finally, Plaintiffs' declarations confirm that, regardless of which region they work in, Security Investigators do not have any input regarding which claims are referred to them or whether to investigate a new referral.  (Id. ¶ 7.)  Instead, they are required to investigate all new referrals unless they are directed to do otherwise by management.  (Id.)  If they are assigned a

claim they do not believe is appropriate for SIU involvement, Security Investigators may speak with the claims examiner about the claim.   (Id.)   If after such a discussion, the Security Investigator still does not believe the claim is appropriate for SIU involvement, she may speak with their supervisor, who will then follow up with the claims department and ultimately make the decision whether to remove the claim from the system or to keep and investigate the claim. (Id.)

> ### E. Security Investigators Routinely Work Over Forty Hours Per Workweek and Are Denied Overtime Compensation

Defendant cannot dispute, and Plaintiffs' declarations confirm, that all Security Investigators are paid an annual salary for their work.  (Id. ¶ 3.)  And while Defendant may dispute the amount and extent of Plaintiffs' hours worked, all Plaintiffs testify in their declarations that they routinely work (or worked) over forty hours per workweek to complete investigations on their files.  (Id. ¶ 11.)  Finally, Security Investigators, other than those in California, are not paid overtime compensation for hours worked over forty hours in a workweek because all Security Investigators are classified as "exempt" employees.  (Id. ¶ 13.)

## ARGUMENT

### I. PROVIDING JUDICIAL NOTICE OF THIS LAWSUIT TO ALL SIMILARLY SITUATED SECURITY INVESTIGATORS IS APPROPRIATE

> #### A. Applicable Law

Plaintiff moves the Court for conditional certification and Court-facilitated notice pursuant to the FLSA, 29 U.S.C. § 216(b).  Collective actions are specifically contemplated under the FLSA.  29 U.S.C. § 216(b).  Benefits of a collective action under § 216(b), as identified by the Supreme Court in Hoffmann-LaRoche v. Sperling, include lower individual costs to plaintiffs in asserting their rights by combining their resources.  493 U.S. 165, 170

(1989).  The Court also noted that "[t]he judicial system benefits by efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged . . . activity."  Id. at

170.  In providing for a collective action, the FLSA states:

> [a]n action . . . may be maintained against any employer . . . in any Federal or
> State court of competent jurisdiction by any one or more employees for and on
> behalf of himself or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action unless he gives his consent
> in writing to become such a party and such consent is filed in the court in which
> such action is brought.

29 U.S.C. § 216(b) (emphasis added).

Generally, district courts in the Fourth Circuit, including the District of Maryland, follow

a two-stage process to determine whether a collective action under the FLSA should be certified.

In Calderon, the Court described the two stage process as follows:

> At the first stage, conditional certification, Plaintiffs must make a preliminary
> factual showing, usually by pleadings and affidavits, that a similarly situated
> group of potential plaintiffs exists.  Because the court has minimal evidence at
> this stage, this determination is made using a fairly lenient standard, and typically
> results in conditional certification of a representative class.
>
> At the conditional certification stage, the court does not make a conclusive
> determination that a class of similarly situated plaintiffs exists; it merely
> determines whether the plaintiffs have made a 'modest factual showing' of similar
> situation that justifies notifying potential plaintiffs of the suit.  Factual disputes do
> not negate the appropriateness of court facilitated notice, but mere allegations in
> the complaint are not sufficient; some factual showing by affidavit or otherwise
> must be made.
>
> Plaintiffs are similarly situated when they raise a similar legal issue as to
> coverage, exemption, or nonpayment of minimum wages or overtime arising from
> similar job requirements and pay provisions.  Class members' positions need not
> be identical, only similar.  However, conditional certification is inappropriate if it
> is apparent that the job responsibilities of potential class members differ in
> significant ways. After discovery is complete and more factual information is
> available to the court, the defendant may file a motion to decertify the class at
> which point the court uses a higher standard to determine whether the members of
> the class are similarly situated.

2011 WL 98197 (D. Md. Jan. 12, 2011) (internal quotations and citations omitted).  This case is in the first stage and, as the facts described above and those in <u>Calderon</u> show, Plaintiff Vetter is similarly situated to the six opt-in Plaintiffs and the putative opt-in Plaintiffs.

After determining that a group of similarly situated employees exists, the next step for the Court is to determine, in its discretion, whether to facilitate notice to potential plaintiffs. <u>Montoya v. S.C.C.P. Painting Contractors, Inc.</u>, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008). This stage is essential to providing prompt notification and accurate information to potential plaintiffs of the pending action, allowing such individuals to learn about the case and to join.  <u>Id.</u>

**B.     Plaintiff Easily Satisfies the Lenient "Similarly Situated" Standard**

Plaintiff's motion is supported by declarations from Plaintiff Vetter and the six opt-in Plaintiffs, in addition to the allegations contained in Plaintiff's Complaint.  The evidence presented thus far shows that Defendant's Security Investigators are similarly situated as all Security Investigators share the same job duties and responsibilities, and are denied overtime compensation by the same company-wide policy.  Moreover, in <u>Calderon</u>, under identical facts, this Court found that Defendant's Security Investigators were similarly situated for purposes of FLSA conditional certification, Rule 23 class certification, and summary judgment.  The same is true here.

In the <u>Calderon</u> plaintiffs' motion for conditional certification and notice, this Court was presented with an identical set of facts when it determined that conditional certification and notice was appropriate.  <u>Calderon</u>, 2011 WL 98197, at *1-3.  In that decision, the Court based its holding on the facts alleged in the plaintiffs' complaint and the declarations submitted by eleven opt-in plaintiffs.  <u>Id.</u>  Here, the same allegations are contained in Plaintiff's Complaint, and are

supported by similar declarations from the named and opt-in Plaintiffs. This Court should follow its own precedent and grant conditional certification in the present case.

Even if the Court were to ignore its rulings in <u>Calderon</u>, the evidence presented by Plaintiff in this case significantly exceeds the evidence required to meet the minimal "similarly situated" standard. Indeed, the named and opt-in Plaintiff declarations confirm that, regardless of geographic location, all Security Investigators perform the same job duties under the same performance standards and in the same hierarchical structure. They are all paid in the same manner and are all classified as exempt from the overtime requirements of the FLSA. The primary legal issue in this case will be the same for all Security Investigators: whether Security Investigators qualify for the administrative exemption. These facts more than satisfy the lenient first-stage burden, without any reliance on <u>Calderon</u>.

## C.    Collective Treatment and Notice are not Precluded by <u>Calderon</u>

Plaintiff anticipates that Defendant will challenge this motion by claiming Plaintiff is somehow precluded or otherwise estopped from seeking collective treatment in this case because notice was previously issued in <u>Calderon</u>. Defendant is wrong. There is nothing in the language of the FLSA that prohibits the Court from authorizing a second collective action, or from authorizing notice in another, identical action. Indeed, several courts have confirmed that collective treatment and notice are appropriate even where an identical case was previously conditionally certified. <u>See, e.g.,</u> <u>Akins v. Worley Catastrophe Response, LLC</u>, 2013 WL 1412371 (E.D. La. Apr. 8, 2013); <u>Lindsay v. GEICO</u>, 2004 WL 4012264 (D.D.C. Nov. 9, 2004); <u>Yates v. Wal-Mart Stores, Inc.</u>, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999).

As an initial matter, there is no indication that Congress intended to preclude courts from conditionally certifying collective actions and authorizing dissemination of judicial notice when

notice was issued to the same group of employees in a prior case: "[T]he law is clear that 'the opt-in provision of [29 U.S.C. § 216] provides for no legal effect on those parties who choose not to participate." Akins, 2013 WL 1412371, at *9 (quoting Yates, 58 F. Supp. 2d at 1218).  As in Akins, Lindsay, and Yates, putative collective class members in this case, Vetter, have the same choices as they did in the original case, Calderon: they may choose "to opt in to this conditionally certified action, file an individual lawsuit, or do nothing."  Akins, 2013 WL 1412371, at *9.  Indeed, one ramification of the opt-in requirement of the FLSA collective action mechanism is that, unlike Rule 23, plaintiffs who do not opt-in to a lawsuit retain their rights to file individual lawsuits, subject to the statute of limitations.  Further, although Defendant may argue that it is duplicative and unnecessary for the Court to authorize dissemination of notice to individuals who previously received notice in Calderon but did not join, this is a new case, and as the court in Lindsay v. GEICO held under a similar set of facts: "it would be inappropriate to exclude those potential plaintiffs who declined to take part" previously.  2004 WL 4012264, at *2.

The decision in Akins is particularly instructive.  The Akins case was identical to a previous case against the same defendant in which the same Court granted conditional class certification and authorized notice.  Id.  After the initial case settled, the Akins plaintiffs, who did not join the initial case or participate in the settlement, sued.  Id.  In its analysis of whether to grant conditional certification under 29 U.S.C. § 216(b), the Akins court found that its decision in the initial case to grant conditional class certification and authorize notice was highly relevant, noting that the collective class in the second case was identical to the class in the first but excluded anyone who opted into the first case.  Id. at *4.  After finding that the plaintiffs satisfied their lenient, first stage burden, the court held that notice was appropriate even though it

was sent in the previous lawsuit, explaining that the prior notice was "obviously ineffective to notify potential plaintiffs of their right to opt in to the *instant, new case*." Id. at *8 (emphasis in original).

The decision in <u>Lindsay</u> is also on point, and even involved the same employer and defense counsel as the instant case.  2004 WL 4012264 (D.D.C. Nov. 9, 2004).  Like this case, the court was presented with the question of whether it should grant a motion for conditional certification and authorize notice to a group of employees who had previously received notice in an identical case.  Id.  The <u>Lindsay</u> court concluded, based upon its ruling in the previous case and the allegations in the plaintiffs' complaint, that conditional certification and notice was appropriate.  Id.  The court rejected the defendant's argument that notice should not be sent to the putative opt-in plaintiffs who received notice in the previous lawsuit but did not join, stating that failing to provide notice to "those potential plaintiffs who declined to take part in" the previous case would be inappropriate, even if it was duplicative.  Id. at *2.

As in <u>Akins</u> and <u>Lindsay</u>, notice to putative opt-in Plaintiffs in this case is appropriate because they are similarly situated to the named and opt-in Plaintiffs.

**D.     Court-Facilitated Notice**

1.   <u>The running of the statute of limitations</u>

The statute of limitations on each putative opt-in plaintiff's claim continues to run until he or she files written consent to join with the court.  See <u>Calderon</u>, 2011 WL 98197, at *7 (quoting <u>Montoya</u>, 2008 WL 554114, at *4).  Accordingly, prompt and accurate notice is a vital tool for informing employees that their statute of limitations is running and to "prevent the continued erosion of [their] claims." <u>Lynch v. United Servs. Auto. Ass'n</u>, 491 F. Supp. 2d 357,

371 (S.D.N.Y. 2007). This is particularly true in this case, where the Court found in <u>Calderon</u> that Defendant violated the FLSA by misclassifying Security Investigators as exempt.

2. <u>Promotion of judicial economies.</u>

Providing judicial notice to the putative opt-in Plaintiffs will provide them with the opportunity to pursue their claims together, in one forum. The consolidation of claims creates judicial economies, as recognized in <u>Hoffmann-La Roche</u>. The collective resolution of the identical issues of law and fact shared by Defendant's Security Investigators, exclusive of those working in California and those who are part of <u>Calderon</u>, provides significant benefit to the judicial system. <u>See Hoffmann-La Roche</u>, 493 U.S. at 170. Such collective resolution will avoid the potential that numerous individual lawsuits may be independently pursued, potentially leading to disparate rulings and a waste of both judicial and party resources.[6]

3. <u>Other interested security investigators</u>

Notice to potential opt-in plaintiffs is also warranted because Plaintiff has established, through the production of six additional consent forms and declarations, that there are other Security Investigators who are interested in joining this litigation. Plaintiffs estimate that there are approximately 200 Security Investigators who were employed during the last three years and who are not part of <u>Calderon</u> and do not work in California.

E.   **Plaintiff's Notice is Accurate and Informative**

Attached as Exhibit B is Plaintiff's proposed judicial notice and consent form. Pursuant to the requirements, it is "timely, accurate, and informative." <u>See Hoffmann-La Roche</u>, 493 U.S. at 172. The notice mirrors the notice form approved in <u>Calderon</u> in all material ways, and thus

---

[6] In an effort to avoid wasting party and judicial resources, Plaintiff's counsel offered to stay this case until the appeal of <u>Calderon</u> was resolved, so long as Defendant agreed to toll the statute of limitations for all putative opt-in Plaintiffs. Defendant rejected Plaintiff's offer, necessitating this motion.

should be approved.  Plaintiff requests that the Court allow putative opt-in Plaintiffs 90 days to

join the case.  Longer notice periods are routinely accepted as reasonable by this and other

courts.  See Calderon ECF No. 32 (90-day notice period); Butler v. DirectSAT USA, LLC, 876

F. Supp. 2d 560, 575 (D. Md. 2012) (same), Mitchel v. Crosby Corp., 2012 WL 4005535, at *7

(D. Md. Sept. 10, 2012) (same).

## II.   PRODUCTION OF A LIST OF SECURITY INVESTIGATORS IS NECESSARY TO FACILITATE NOTICE.

Plaintiff requests that as part of its Order granting Plaintiff's motion, the Court also order

Defendant to provide Plaintiff with the information necessary to mail notice to those eligible

Security Investigators. See Hoffmann-La Roche, 493 U.S. at 170.  Specifically, Plaintiff requests

that Defendant be ordered to produce to Plaintiff the following within ten business days of the

Court's Order: a list, in electronic and importable format, of all persons employed by Defendant

as Security Investigators, exclusive of those who are a part of Calderon or who work(ed) in

California, within three years of the Court's Order, including their name, address, dates of

employment as a Security Investigator, and employee identification number.   Although

Defendant produced some of this information as part of the Calderon lawsuit, contact

information for potential plaintiffs may have changed and additional Security Investigators may

have been hired who would be eligible to participate in this collective action and were not mailed

notice.

## CONCLUSION

Plaintiff has provided the Court with extensive evidence that he is similarly situated to

the opt-in and putative opt-in Plaintiffs, and there is nothing about the Calderon case that

precludes the Court from authorizing notice in this case.  Plaintiff therefore respectfully requests

that this Court: (1) promptly authorize this case to proceed as a collective action; (2) order the

identification of all Security Investigators who worked for Defendant during the applicable statutory period, excluding those employed in California and those who are part of <u>Calderon</u>; and (3) authorize Plaintiff to mail the proposed notice to all putative opt-in Plaintiffs.


Date: July 11, 2013                         /s/ _____
                                            **NICHOLS KASTER, PLLP**
                                            Matthew H. Morgan, MN State Bar No. 304657
                                            (admitted *pro hac vice*)
                                            Timothy C. Selander, MN State Bar No. 0387016
                                            (admitted *pro hac vice*)
                                            4600 IDS Center, 80 South 8th Street
                                            Minneapolis, MN 55402
                                            Telephone (612) 256-3200
                                            Fax (612) 215-6870
                                            morgan@nka.com
                                            selander@nka.com


                                            /s/ _____
                                            (signed by Matthew H. Morgan with
                                            permission of Sundeep Hora)
                                            **ALDERMAN, DEVORSETZ & HORA PLLC**
                                            Sundeep Hora, MD State Bar No. 28208
                                            1025 Connecticut Avenue NW, Suite 615
                                            Washington, D.C. 20036
                                            Telephone (202) 969-8220
                                            Facsimile (202) 969-8224
                                            shora@adhlawfirm.com

                                            Counsel for Plaintiff and the Opt-In Plaintiffs

14